UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

ANDREW FIGGINS, 04-B-2343,

                    Petitioner,

          -v-                                    09-CV-0680(MAT)
                                                 **ORDER**
JAMES CONWAY,

                    Respondent.

———————————————————————

I.   **Introduction**

      *Pro se* petitioner Andrew Figgins ("petitioner") has filed a
petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254
challenging his conviction of Burglary in the Second Degree (N.Y. Penal
L. § 140.25(2)) in Monroe County Court, following a jury trial before
Judge John Schwartz. Petitioner was sentenced as a persistent violent
felony offender to an indeterminate prison term of sixteen years to
life.

II.  **Factual Background and Procedural History**

      Petitioner's conviction stems from an incident that occurred on
the afternoon of August 19, 2003, during which petitioner was observed
exiting a house in the City of Rochester carrying a chainsaw. The
eyewitness, Patrick Burke ("Burke"), the owner of the home and the
chainsaw, yelled for neighbors to call 911. Burke then took a small
knife out of his pocket and asked what petitioner was doing with his
chainsaw. Petitioner asked Burke if he would let him go because "he
didn't get nothing." He then told Burke that he was diabetic and asked

for some water. Burke testified that he offered to turn on the faucet on the outside of the house for petitioner to get a drink. When Burke went to turn the water on, petitioner dropped the hose, which he had been holding, ran toward an empty lot, and jumped over a fence. At some point during their conversation, petitioner offered to sell Burke a camera. Trial Tr. 289-308, 317.

A neighbor, Brenda Smith, heard Burke yelling for someone to call 911, and observed petitioner exiting Burke's house carrying "something real bulky." After coming downstairs, she looked out her front door and saw petitioner running away. Trial Tr. 324-36.

A short time later, another neighbor, Thomas Woodfield ("Woodfield"), approached Burke, who was with a crowd of people who had gathered near his house at the Corner of Chace and Aab Streets. After Burke told Woodfield what had happened, Woodfield went into his backyard and found petitioner hiding in a crawl space under his kitchen. Petitioner repeatedly asked Woodfield, "don't do this." Rochester Police Officer James Noble, who was patrolling the area, was directed to Woodfield's backyard where he arrested petitioner. Trial Tr. 356-82.

At trial, petitioner denied entering Burke's covered porch and having possessed Burke's chainsaw. Petitioner testified that he was walking home from his sister's house carrying a duffel bag full of DVDs when he began to feel dehydrated. Petitioner was diabetic, and had not taken his insulin in two to three weeks. Feeling that he needed

something to drink, he went into Burke's backyard because he saw a truck out front and assumed "somebody was doing some kind of work or something." Seeing nobody around, petitioner knocked on the back door. When nobody answered, he attempted to open the screen door. According to petitioner, as he grabbed the doorknob, Burke appeared and asked him what he was doing "coming off his back porch." When petitioner denied being on the porch, Burke "pulled out a little knife" and told petitioner to sit down. Petitioner then told Burke that he was a diabetic and needed water, and said that he was going to get Burke's garden hose to drink from. According to petitioner, when he went to retrieve the hose, Burke threatened to "poke" him with the knife. Attempting to "throw [Burke] off," petitioner offered to sell him DVDs. Burke declined, and called for someone to call the police. Petitioner then hopped over a fence and began "walking real fast." Trial Tr. 394-402, 405.

Petitioner also denied hiding in the crawl space beneath Woodfield's house. According to his testimony, he was "stashing" the DVDs under the porch because he bought them while getting high and didn't know where they came from, and wanted to get rid of them before the police came. Trial Tr. 402-06.

The jury found petitioner guilty of second-degree burglary. Trial Tr. 500. Following a hearing, petitioner was adjudicated a persistent violent felony offender and was subsequently sentenced to sixteen years to life imprisonment. Sentencing Tr. 30.

Petitioner filed an appeal in the Appellate Division, Fourth Department, which unanimously affirmed the judgment of conviction. People v. Figgins, 48 A.D.3d 1042 (4th Dept. 2008), lv. denied, 10 N.Y.3d 840 (2008). Petitioner also filed an application for writ of error coram nobis in Fourth Department; that application was also denied. People v. Figgins, 68 A.D.3d 1823 (4th Dept. 2009). It does not appear that petitioner sought leave to appeal that denial.

The instant habeas petition (Dkt. #1) followed, in which petitioner raises the following grounds for relief: (1) insufficiency of the evidence; (2) the prosecutor improperly cross-examined petitioner regarding his prior convictions; (3) the trial court erred in failing to dismiss the jury pool; (4) the trial court erroneously allowed the prosecution to introduce evidence of petitioner's prior bad acts; (5) the trial court erred in refusing to allow petitioner to challenge the constitutionality of his prior convictions before sentencing him as a persistent violent felony offender; (6) ineffective assistance of trial counsel; and (7) ineffective assistance of appellate counsel. Petition ("Pet.") ¶ 22(A)-(G).

The respondent submits that petitioner's claims are either unexhausted, procedurally barred, unreviewable and/or without merit (Dkt. #13).

For the reasons that follow, the petitioner is not entitled to the writ, and the petition is dismissed.

## III. Discussion

### A.    General Principles Applicable to Federal Habeas Review

#### 1.    Standard of Review

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. <u>See</u> 28 U.S.C. § 2254(d)(1), (2); <u>Williams v. Taylor</u>, 529 U.S. 362, 375-76 (2000).

#### 2.    Exhaustion Requirement and Procedural Bar

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State ...." 28 U.S.C. § 2254(b)(1)(A); <u>see, e.g.</u>, <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999); <u>accord, e.g.</u>, <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir.1994), <u>cert. denied</u>, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." <u>Daye v. Att'y General of State of N.Y.</u>, 696 F.2d 186, 191 (2d Cir.1982) (<u>en banc</u>), <u>cert. denied</u>, 464 U.S. 1048 (1984). "The exhaustion requirement is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption

of state judicial proceedings, and is not satisfied unless the federal claim has been fairly presented to the state courts." <u>Jimenez v. Walker</u>, 458 F.3d 130, 148-149 (2d Cir.2006) (internal citations and quotation marks omitted).

However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred." <u>Grey v. Hoke</u>, 933 F.2d 117, 120 (2d Cir.1991) (quoting <u>Harris v. Reed</u>, 489 U.S. 255, 263 n.9 (1989); other citations omitted). Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." <u>Grey</u>, 933 F.2d at 120. The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes federal court litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice, i.e., that the petitioner is actually innocent. <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991).

**B.   Merits of the Petition**

  **1.   Grounds One, Two, Three, Five and Seven are Unexhausted and Procedurally Barred**

The first five grounds alleged in the petition, <u>see</u> Pet. ¶ 22(A)-(D), mirror the claims petitioner raised in his brief to the Fourth Department on direct appeal. <u>See</u> Resp't Appx. B. As the Court observed

earlier in its order dated December 27, 2009 (Dkt. #7), only the fourth ground, a state evidentiary claim, was presented to the New York Court of Appeals in an application for discretionary review. Resp't Appx. F.

In order to satisfy the exhaustion requirement, a habeas petitioner "must present his claims to a state supreme [i.e., highest] court in a petition for discretionary review in order to satisfy the exhaustion requirement." O'Sullivan, 526 U.S. at 839-40.  Where, as here, an appellant has argued one claim at length and attached an appellate brief without alerting the state court to each individual claim he sought to raise "does not fairly present such claims for purposes of the exhaustion requirement."  Jordan v. LeFevre, 206 F.3d 196, 199 (2d Cir.2000). Accordingly, Grounds One, Two, Three, and Five are unexhausted based on petitioner's failure to fairly present those claims to the state's highest court.

Moreover, these claims must be deemed exhausted because he cannot raise them in any state court forum since he has used the one request for leave to appeal to which he is entitled and cannot seek collateral relief because the issues were previously determined on the merits on direct appeal. See Grey, 933 F.2d at 119-120; see e.g., N.Y. Court Rules § 500.20; N.Y. Crim. Proc. L. § 440.10(2)(a) (a motion to vacate a judgment pursuant to § 440.10 must be denied where the claim "was previously determined on the merits upon an appeal from the judgment"). That procedural default bars review here.

Petitioner's Ground Seven, which alleges that his appellate counsel was constitutionally ineffective, Pet. ¶ 22(G), is likewise unexhausted because he failed to seek leave to appeal the Appellate Division's denial of his *coram nobis* motion. For a *coram nobis* application in New York to be fully exhausted, a petitioner must seek leave to appeal the denial of his application to the New York Court of Appeals. N.Y. Crim. Proc. Law § 450.90(1); see Shomo v. Maher, No. 04-cv-4149, 2005 WL 743156, *4 (S.D.N.Y. Mar.31, 2005) (petitioner did not exhaust his state remedy because he did not seek leave to appeal the denial of his *coram nobis* application to the New York Court of Appeals).

An appeal from a denial of *coram nobis* relief must be taken "[w]ithin thirty days after service upon the appellant of a copy of the order sought to be appealed . . . ." N.Y. Crim. Proc. L. § 460.10(5)(a). While a party may obtain up to a one-year extension of time to file an appeal, such application may not be made more than one year after the time for taking an appeal has expired. N.Y. Crim. Proc. L. § 460.30; see Shomo, 2005 WL 743156 at *5. In petitioner's case, both the time to seek leave to appeal and time to obtain an extension to file an application for such leave have expired. It would therefore be futile to return to state court because his application for leave would, at this point, be time-barred. See Edmee v. Coxsackie Corr. Facility, Nos. 09-Civ-3940, 09-Civ-3939, 2009 WL 3318790, at *2 (E.D.N.Y. Oct.14, 2009) ("The failure to timely appeal the denial of


petitioner's § 440.10 motion means that the claim is not only unexhausted, but procedurally barred under state law because it is too late to take that appeal and a state court would dismiss it on that ground."); <u>DeVito v. Racette</u>, No. CV-91-2331, 1992 WL 198150, at *3 (E.D.N.Y. Aug.3, 1992) ("Petitioner's failure to abide by these state time limits suggests that he has inadvertently exhausted his claim: if the state courts will not hear his claim because of their time limits, then the state affords him no further opportunity for relief. This reasoning would not help petitioner, however, because, to the extent that the Court considered his application to be exhausted, the manner in which it became exhausted would require the Court to conclude that it is also procedurally barred."); <u>see also</u> <u>Grey</u>, 933 F.2d at 120. Accordingly, petitioner's seventh ground for relief is also subject to a procedural default.

"Federal courts may address the merits of a claim that was procedurally defaulted in state court only upon a showing of cause for the default and prejudice to the petitioner." <u>Bossett</u>, 41 F.3d at 829 (citing <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87 (1977)). Petitioner does not allege cause for the procedural default. Also, he has not demonstrated that failure to consider the remaining claims will result in a fundamental miscarriage of justice. <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991). Accordingly, those claims are subject to an unexcused procedural default and further review of them in this habeas proceeding is unavailable.

### 2.   Ground Six is Unexhausted, Procedurally Barred, and Without Merit

In the sixth ground of the petition, petitioner claims that he received ineffective assistance of trial counsel because his attorney failed to call an expert witness to testify to petitioner's physical condition at the time of the incident and failed to make certain objections at trial. Pet. ¶ 22(F). Petitioner raises these claims for the first time in the instant petition and therefore did fairly present them to any state court.   For that reason they are unexhausted, procedurally barred in part, and lacking in merit.

With regard to petitioner's argument this attorney should have objected to the trial court's instructions to the jury, to the cross-examination of petitioner at trial, and that he failed to bring a motion to challenge the jury panel, such contentions are matters of the appellate record. Because petitioner did not raise these claims on direct appeal, he no longer has remedies available in state court and is subject to a procedural bar. See Point III.B.1; N.Y. Crim. Proc. L. § 440.10(2)(c)(mandating that the state court deny any 440.10 motion where the defendant unjustifiably failed to argue such constitutional violation on direct appeal despite a sufficient record). Again, petitioner does not allege cause and prejudice, nor does he set forth any facts to support the miscarriage of justice exception.

To the extent that petitioner's claim may rely on off-the-record matters, such as petitioner's claim regarding counsel's failure to call

an expert witness regarding his physical and mental state, it also is unexhausted and without merit.

This Court has discretion under 28 U.S.C. § 2254(b)(2) to deny on the merits a habeas petition containing unexhausted claims. See Pratt v. Greiner, 306 F.3d 1190, 1196-97 (2d Cir.2002); see also Smith v. Texas, 550 U.S. 297, 324 (2007) ("In the absence of any legal obligation to consider a preliminary nonmerits issue, a court may choose in some circumstances to bypass the preliminary issue and rest its decision on the merits.") (citing 28 U.S.C. § 2254(b)(2) (federal habeas court may reject claim on merits without reaching question of exhaustion)). "Section 2254(b) merely gives the Court discretion to deny unexhausted petitions on the merits; it does not require the Court to determine unexhausted claims." Otero v. Stinson, 51 F.Supp.2d 415, 420 (S.D.N.Y.1999).

"Section 2254(b) (2), however, 'does not provide a standard for determining when a court should dismiss a petition on the merits rather than requiring complete exhaustion.'" Otero, 51 F.Supp.2d at 420 (quoting Lambert v. Blackwell, 134 F.3d 506, 516 (3d Cir.1997)). While neither the Supreme Court nor the Second Circuit has established what standard a district court should use to determine when to dismiss a petition on the merits rather than requiring complete exhaustion, several habeas courts in this Circuit have expressed the test as whether the unexhausted claim is "patently frivolous." E.g., Turner v. Senkowski, No. 97-CV-653, 1998 WL 912011 at *4 (W.D.N.Y. Nov. 23,

11

1998); Youngblood v. Greiner, 97 Civ. 3289, 1998 WL 720681 at *6 (S.D.N.Y. Oct.13, 1998); Colon v. Johnson, 19 F.Supp.2d 112, 120, 122 (S.D.N.Y.1998); Hogan v. Ward, 998 F.Supp. 290, 293 (W.D.N.Y.1998); Edkin v. Travis, 969 F.Supp. 139, 142 n.1 (W.D.N.Y.1997); Rodriquez v. Miller, 96 Civ. 4723, 1997 WL 599388 at *3 (S.D.N.Y. Sept.29, 1997); Ojeda v. Artuz, 96 Civ. 5900, 1997 WL 283398 at *3 n. 5 (S.D.N.Y. May 29, 1997). Similarly, the "Third, Fifth, and Ninth Circuits have held that section 2254(b)(2) embodies the Supreme Court's pre-AEDPA holding in Granberry v. Greer, [481 U.S. 129, 135 (1987)] which states that a court may deny an unexhausted claim on the merits if it is 'perfectly clear that the applicant does not raise even a colorable federal claim.'" Fayton v. Connolly, No. 06 Civ. 3685(SAS), 2009 WL 1615995, at *4 & n.45 (S.D.N.Y. June 9, 2009) (quoting Cassett v. Stewart, 406 F.3d 614, 623 (9th Cir.2005); Jones v. Morton, 195 F.3d 153, 156 n. 2 (3d Cir.1999); Mercadel v. Cain, 179 F.3d 271, 276 n. 4 (5th Cir.1999)). Petitioner's claim fails under either standard.

Petitioner includes in his petition correspondence from his trial attorney to the Monroe County District Attorney's Office regarding his intention to call an expert witness, an endocrinologist, to testify generally as to the medical condition of diabetes and its treatment by use of insulin, as relevant to the petitioner's physical condition and mental state and the time of the incident. See Pet. at 11 (Ltr. from Matthew J. Clark, Esq. dated 1/6/2004). Attached to that letter was a request for an adjournment, directed to the trial court, on the basis

12

that his expert witness was unavailable until after the scheduled trial date of January 12, 2004. Pet. at 12.  On January 12, 2004, the trial court granted counsel's request, anticipating that the physician would testify at trial. However, the record further reveals that counsel subsequently indicated that he would not call the expert witness. Trial Tr. 27.

"The decision whether to call an expert witness at trial generally falls within the realm of strategic choices that should not be second-guessed by a court on review." Rayford v. Greene, No. 02 CV 0811, 2008 WL 941706, at *8 (W.D.N.Y. April 4, 2008) (citing United States v. Kirch, 54 F.3d 1062, 1072 (2d Cir.1995)); accord Mitchell v. Artus, No. 07 Civ. 4688, 2008 WL 2262606, at *29-30 (S.D.N.Y. June 2, 2008). Here, petitioner cannot overcome the "strong presumption that [his attorney's]  conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 689. Although the record is silent as to why counsel ultimately decided not to call the expert witness, the Court notes that defense counsel clearly investigated petitioner's medical condition and sought to build the defense around petitioner's physical condition at the time of the crime and how it affected his mental state and therefore his intent to commit the crime. It is apparent from the parties' submissions and the trial transcript that counsel's conduct was reasonable on the facts of this case, and it is inappropriate for this Court to second-guess counsel's defense strategy. Strickland, 466 U.S. at 690.

Petitioner also cannot show that there is a "reasonable probability" that, but for counsel's failure to call the expert witness, the result of the trial would have been different. Id. at 694. Viewing the "totality of the evidence before the . . . jury," id. at 695, the absence of expert testimony on diabetes would have merely had an "isolated, trivial effect." Id. Petitioner was observed by two witnesses leaving Burke's enclosed porch carrying large object, which Burke knew to be his chainsaw. He then fled on foot, and proceeded to hide in a neighbor's crawl space until his arrest. Trial Tr. 386, 404-05. While counsel cogently argued that petitioner could not have committed the crime because his physical condition was such that petitioner would not have been able to carry a heavy chainsaw, and entered Burke's property only to obtain a drink of water, the jury also heard testimony that petitioner spontaneously told Rochester Police Officers that he had been using crack-cocaine at the time of the incident. Trial Tr. 386, 404-05. It is unavailing then, that the medical testimony from an endocrinologist would have exonerated petitioner; the jury did not credit the defense, most likely in light of the overwhelming evidence against him. Accordingly, this unexhausted claim must be dismissed.

### 3.   Ground Four is Without Merit

Petitioner contends that he was denied a fair trial because the trial court erroneously permitted the introduction of evidence of petitioner's use of crack-cocaine at the time of the crime. The

Appellate Division rejected petitioner's contention, finding that the trial court properly allowed the evidence as relevant to the issue of motive. People v. Figgins, 48 A.D.3d 1042 (4th Dept. 2008).

Because the United States Supreme Court has declined to determine whether use of uncharged crimes would violate due process, the Appellate Division's rejection of petitioner's argument cannot be considered an unreasonable application of clearly established Supreme Court precedent. See Jones v. Conway, 442 F.Supp.2d 113 (S.D.N.Y.2006) (citing Estelle v. McGuire, 502 U.S. 62, n.5 (1991). Moreover, "[a] decision to admit evidence of a criminal defendant's uncharged crimes or bad acts under Molineux constitutes an evidentiary ruling based on state law." Sierra v. Burge, 06 Civ. 14432, 2007 WL 4218926, *5 (S.D.N.Y. Nov. 30, 2007). As such, state court Molineux rulings are generally not cognizable on habeas review. See Roldan v. Artuz, 78 F.Supp.2d, 260, 276 (S.D.N.Y.2000). Rather, federal courts reviewing evidentiary matters may issue a writ of habeas corpus only if the petitioner demonstrates that the alleged evidentiary error violated a constitutional right and that the error "was so extremely unfair that its admission violates fundamental conceptions of justice." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir.1998) (internal quotation omitted). "For the erroneous admission of other unfairly prejudicial evidence to amount to a denial of due process, the item must have been 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'"

Id. (quoting Johnson v. Ross, 955 F.2d 178, 181 (2d Cir.1992) and citing Collins v. Scully, 755 F.2d 16, 19 (2d Cir.1985) (evidence must be "crucial, critical, highly significant")).

In general, evidence of uncharged crimes is inadmissible in a criminal trial due to the danger that the jurors will convict due to their perception that the defendant is predisposed to commit crime rather than determining the defendant's guilt or innocence based upon a consideration of the evidence regarding the charged offense. E.g., Molineux, 168 N.Y. at 291. However, in Molineux the New York Court of Appeals held that evidence of other crimes or bad acts may be admitted to the extent that it is relevant to an issue other than the defendant's criminal tendency, such as motive, intent, *modus operandi*, common scheme or plan, or identity. Id. at 293. Thus, New York law is "well settled that 'where the evidence of prior, uncharged criminal conduct has a bearing upon a material aspect of the People's case other than the accused's general propensity toward criminality . . . the probative value of the evidence justifies its admission, notwithstanding the potential for incidental prejudice[.]'" People v. Lee, 284 A.D.2d 412 (2nd Dept.2001) (citation omitted). Moreover, New York state courts have held that evidence of drug use may be admitted because it is relevant on the issue of motive in committing the offenses charged. People v. Tutt, 305 A.D.2d 987 (4th Dept.), lv. denied, 100 N.Y.2d 588 (2003); People v. Yanes, 243 A.D.2d 660 (2nd Dept. 1997) ("the testimony regarding the defendant's prior drug use

was admissible as it was relevant on the issue of his motive in committing the offenses charged and was inextricably interwoven with the crime").

Here, the evidence that petitioner spontaneously told a Rochester Police Officer that he was "thirsty, dizzy, light-headed," and that he had been using crack-cocaine, Trial Tr. 386, was properly admitted under New York evidentiary law as motive for stealing the chainsaw from Burke's porch. Because petitioner has failed to establish a violation of a state evidentiary rule, petitioner has also failed to allege a constitutional infirmity. See King v. Greiner, No. 02 Civ.5810(DLC)(AJP), 2008 WL 4410109, at *38 (S.D.N.Y. Sept. 26, 2008) ("the proper application of a presumptively constitutional state evidentiary rule could not be unconstitutional."); Jones v. Stinson, 94 F.Supp.2d 370, 391-92 (E.D.N.Y.) (once the habeas court has found that the state court ruling was not erroneous under state law, there is no need to apply a constitutional analysis), rev'd on other grounds, 229 F.3d 112 (2d Cir.2000)). Petitioner, therefore, has not set forth a basis for habeas relief, and this claim is dismissed.

**IV.  Conclusion**

For the reasons stated above, Andrew Figgins' petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Petitioner has failed to make a "substantial showing of a denial of a constitutional right", 28 U.S.C. § 2253 (c)(2), the court declines the issue of certificate of appealability. See, e.g., Lucidore

v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir.2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

       **SO ORDERED.**

<div align="right">
S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge
</div>

Dated:      May 25, 2011
           Rochester, New York